IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**JUAN ZAYAS-NUÑEZ,**

**Plaintiff,**

**v.**                                                                            CIVIL NO. 14-1464 (GAG)

**SELECTOS CAMPO RICO, INC., ET AL.,**

**Defendants.**

<u>OPINION AND ORDER</u>

Plaintiff Juan Zayas-Nuñez ("Plaintiff") filed suit alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") against his former employer Selectos Campo Rico, Inc. ("Defendant").   (Docket No. 11-1.) Plaintiff also alleges claims under several Puerto Rico state laws asserting supplemental jurisdiction.[1]

Presently before the Court is Defendant's Motion for Summary Judgment, arguing judgment as a matter of law is appropriate because Plaintiff failed to exhaust administrative remedies, Plaintiff failed to present evidence of severe or pervasive sexual harassment, Defendant cannot be held liable as the employer for the alleged sexual harassment, and Defendant has presented legitimate non-discriminatory reasons for terminating Plaintiff.   (Docket No. 81.) Plaintiff replied, and Defendant sur-replied.  (Docket Nos. 89; 102.)

---

[1] Plaintiff's supplemental claims are based upon Law No. 100 of June 30, 1959, as amended, P.R. LAWS ANN. tit. 29, §§ 146 ("Law 100"); Law No. 69 of July 6, 1985, as amended, P.R. LAWS ANN. tit. 29, §§ 1321 ("Law 69"); Law No. 17 of April 22, 1988, as amended, P.R. LAWS ANN. tit. 29, §§ 155 ("Law 17"); Law No. 80 of May 30, 1976, as amended, P.R. LAWS ANN. tit. 29, §§ 185a, ("Law 80"); Law No. 115 of December 20, 1991, P.R. LAWS ANN. tit. 29, §§ 194a ("Law 115"); Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, §§ 5141-5142; and the Puerto Rico Bill of Rights, Article II, Section 1 of the Constitution of the Commonwealth of Puerto Rico.

Civil No. 14-1464 (GAG)

After reviewing the parties' submissions and pertinent law, the Court hereby **DENIES in part and GRANTS in part** Defendant's Motion for Summary Judgment at Docket No. 81.

## I.    Relevant Factual Background

A.    <u>Sexual Harassment Incidents</u>

On February, 2011, Plaintiff Zayas began working as a bagger at Selectos grocery store. (Docket Nos. 82 ¶¶ 1, 3; 90 ¶¶ 1, 3.)  Eventually he was promoted to cashier and aisle stocker. (Docket Nos. 82 ¶ 2; 90 ¶ 2.)  Plaintiff had seven supervisors during his time at Selectos, his immediate supervisor being Antonio Rosa.  (Docket Nos. 82 ¶ 8; 90 ¶ 8; 91-1 at 142.)  Plaintiff identifies Joy Carrasco ("Carrasco") as his supervisor because certain disciplinary complaints were signed by Carrasco, identifying him as the authorized supervisor.  (Docket No. 90 ¶ 8.)  Defendant also identified Carrasco as one of Plaintiff's supervisors from August 2011 until February 2014 and as a Store Manager.  (<u>Id.</u>; Docket No. 91-1 at 142.)

Plaintiff maintains that shortly after Carrasco was made a manager at the store, Carrasco repeatedly sexually harassed Plaintiff and other employees.  (Docket No. 91 ¶ 27.)  Plaintiff provides evidence that while standing at the cash register, Carrasco would walk behind him and press his penis against Plaintiff's body.  <u>Id.</u> ¶ 28.   Plaintiff describes another incident in which while stocking merchandise in one of Selectos' aisles, Carrasco snuck behind him placed his penis at the height of Plaintiff's face, and when Plaintiff looked back Carrasco said "what do you think of this?" pointing at his penis.  <u>Id.</u> ¶ 28.  Plaintiff also provides evidence that every time Carrasco greeted him, Carrasco would affectionately squeeze his shoulder and rub his hand in a sexual manner.  <u>Id.</u> ¶ 30.  Plaintiff also maintains Carrasco would often use sexual language, make unwelcomed sexual jokes, and make comments of sexual nature.  <u>Id.</u> ¶ 31.  As an example, Plaintiff describes and incident where Carrasco asked Plaintiff if he "would [ ] dare hit her with

Civil No. 14-1464 (GAG)

this one," indicating penetration of a female client.  Id. ¶ 32.  Plaintiff also testified that once, he asked Carrasco to open the locked pharmacy cabinet, and Carrasco responded if he would like it to be done "how you like it for me to open you?" which Plaintiff characterized as a sexual overture. Id. ¶ 33.

Defendant denies Plaintiff's allegations, and maintains Plaintiff did not present a complaint pursuant to the company's sexual harassment policy.   (Docket Nos. 82 ¶ 7; 104 ¶¶ 27-33.) Defendant contends that when Plaintiff first started working at Selectos, he received a copy of the store's sexual harassment policy, which specifies that any sexual harassment complaint must indicate the date of the incident, the names of the grievant and harasser, details of the harassment, and the name of any possible witnesses.  (Docket No. 82 ¶¶ 5, 6.)  Selectos' sexual harassment policy provides for both written and verbal complaints.  (Docket No. 90 ¶ 7.)  Plaintiff counters that his Selectos' personnel file did not contain a copy of the sexual harassment policy.  Id. ¶ 6.

Plaintiff also presented evidence demonstrating that he requested an investigation about Carrasco's sexual conduct, complained verbally to Selectos Co-owner Nora Alvarez, and complained verbally and in writing to Supervisor Antonio Rosa.  (Docket No. 90 ¶ 7.)  In response to a disciplinary measure discussed below, Plaintiff also includes a written complaint of sexual harassment by Carrasco.  (Docket Nos. 82 ¶ 29; 90 ¶¶ 7, 29.)

In response to Plaintiff's complaint, Defendant hired Elizabeth Class, an independent consultant for the administration of human resources, to conduct an investigation into the matter. (Docket Nos. 82 ¶¶ 30-32; 90 ¶¶ 30-32.)  On July 8, 2013, Class requested Plaintiff to submit a more detailed complaint with pertinent facts, dates and hours, and names of witnesses who might have observed the harassment.  (Docket Nos. 82 ¶ 34; 90 ¶ 34.)  Selectos President Horacio Lopez mailed the request to Plaintiff's last known postal address, but the letter was later returned as

Civil No. 14-1464 (GAG)

1    "unclaimed."   (Docket Nos. 82 ¶¶ 33, 35-36; 90 ¶¶ 33, 35-36.)   On two different dates, Class

2    conducted several interviews to investigate Plaintiff's allegations, but failed to interview Plaintiff.[2]

3    (Docket Nos. 82 ¶¶ 37-39; 90 ¶¶ 37-39.)   Class ultimately concluded that because none of the

4    witness had any knowledge of the sexual harassment, and in light of the evidence gathered, there

5    had been no act of sexual harassment.   (Docket Nos. 82 ¶ 40; 90 ¶ 40; 91 ¶ 36.)   Carrasco was not

6    suspended or admonished for the conduct that formed the basis of Plaintiff's complaint.   Id. ¶¶ 37,

7    42.

8           On August 21, 2013, Plaintiff complained against Defendant through a dual filling with the

9    Department of Labor before the Anti-Discrimination Unit ("ADU"), and the Equal Employment

10    Opportunity Commission ("EEOC").   (Docket No. 82-20.)

11           B.   Disciplinary Measures against Plaintiff

12           On December 29, 2012, Plaintiff was given a written warning because he failed to report to

13    work and notify his absence.   (Docket Nos. 82 ¶ 9; 90 ¶ 9.)   At his deposition, Plaintiff testified

14    that he believed the warning was unwarranted because he did notify Selectos of his absence.

15    (Docket No. 90 ¶ 9.)   On January 19, 2013, Plaintiff was admonished because he failed to pay for

16    an item he consumed at the store.   (Docket Nos. 82 ¶ 10; 90 ¶ 10.)   Plaintiff testified that in this

17    instance, Carrasco created false charges in retaliation for Plaintiff's rejection of Carrasco's sexual

18    advances.   (Docket No. 90 ¶ 10.)   On January 22, 2013, Plaintiff was admonished because he

19    failed to report to work three days before.   (Docket Nos. 82 ¶ 11; 90 ¶ 11.)   On June 3, 2013,

20    Plaintiff was given another admonishment because he reported to work late.   (Docket Nos. 82 ¶ 12;

21    90 ¶ 12.)   However, Plaintiff stated that he arrived on time to comply with a change of schedule

22

23          [2] On July 8, 2013, Class interviewed Grocery Manager and Supervisor Antonio Rosa, Cashier's Supervisor
     Dianamar Cristobal, Cashier Luz Damaris Rosario, and Aisles Employee Bryan Molinaris.   (Docket Nos. 82 ¶ 38; 90 ¶
     38.)   On August 28, 2013, Class interviewed Operational Manager Harry Lopez, Store Manager Juan Lopez, and Store
24    Manager Joy Carrasco.   (Docket Nos. 82 ¶ 38; 90 ¶ 39.)

Civil No. 14-1464 (GAG)

that ordered him to come at 10:00 A.M. instead.  (Docket No. 90 ¶ 12.)  On July 2, 2013, Plaintiff

was admonished for tardiness and failure to obey orders.  (Docket Nos. 82 ¶ 13; 90 ¶ 13.)  Plaintiff

objected to this disciplinary action as unjust, and in response included a written complaint

asserting sexual harassment by Carrasco and general harassment in the workplace.  (Docket Nos.

82 ¶ 29; 90 ¶¶ 7, 29.)  Upon reading the complaint, Selectos' President Horacio Lopez told

Plaintiff that he was a "trickster" and that he had to leave, because he was no longer welcomed to

work at the grocery store.  (Docket No. 91 ¶ 57.)  After this incident, Plaintiff reported to the State

Insurance Fund on July 3, 2013.  (Docket Nos. 82 ¶ 24; 90 ¶ 24.)  Plaintiff was granted leave, and

received treatment until the beginning of August, reporting back to work on August 14, 2013.

(Docket No. 85-18.)

On December 4, 2013, Plaintiff received a thirty-day suspension for insubordination, lack

of respect towards his supervisor, and screaming at a customer.  (Docket Nos. 82 ¶ 14; 90 ¶ 14.)

Plaintiff states that he had never seen the written suspension prior to his deposition, and in any

case, he objected at the time maintaining that he was not screaming and had merely asked a co-

worker for a code he needed for the cash register.  (Docket No. 90 ¶ 14.)  On February 11 and 13,

2014, Defendant asked Plaintiff to present a medical certificate establishing he could work at the

grocery store.  (Docket Nos. 82 ¶¶ 17, 18; 90 ¶¶ 17, 18.)  Plaintiff did not provide Defendant with

the medical certificate.  (Docket No. 82 ¶ 21; 90 ¶ 21.)  On February 18, 2014, Plaintiff violated

Selectos' cash register imbalance policy due to a difference of $4.98 at the time he closed his cash

register.  (Docket Nos. 82 ¶ 19; 90 ¶ 19.)  Defendant maintains that it is customary to issue

warnings to employees who violate Selectos' under/over policy.  (Docket No. 82 ¶ 20.)  Plaintiff

provides evidence that violating the policy is just cause for a severe disciplinary action, but not

termination, and that no other employee had been fired for such a violation.  (Docket Nos. 90 ¶ 20;

Civil No. 14-1464 (GAG)

91 ¶ 55.)  On February 21, 2014, Defendant terminated Plaintiff's employment because of the cash register imbalance, and due to his repeated violations of the company's norms and policies. (Docket Nos. 82 ¶ 22; 90 ¶ 22.).

C.  Allegations of Sexual Harassment by Other Employees:

Plaintiff provided evidence of three other Selectos' employees who claim they were sexually harassed by Carrasco, corroborating Plaintiff's allegations against Carrasco, and who also maintain that Defendant did not take appropriate action against Carrasco.  (See Docket No. 105-1 at 1-3.)

Leslie Miguel de Leon ("Miguel") testified she witnessed Carrascos' harassment of Plaintiff, that Carrasco often used sexually-charged words and made comments with sexual meaning, and that at times he insinuated she should go out with him even though she had a boyfriend.  (Docket No. 91 ¶ 34.)  Miguel also maintains Carrasco rubbed her back on multiple occasions when he assisted her at the cash register.  Id.  Miguel sustains she complained to Alvarez, "but nothing was resolved."  (Docket No. 105-1 at 2.)  Miguel eventually quit her job at Selectos.  (Docket No. 91-1 at 56.)

Rafael Natal Pastoriza ("Rafael Natal") testified that Carrasco used inappropriate language, such as "my love," "baby," "dear," when shaking Rafael Natal's hand, and he would scratch it with his finger in a sexually suggestive manner.  Id.  Rafael Natal also testified that Carrasco would often use "pick-up lines" on the cashiers and touch the backs of the baggers.  (Docket No. 91 ¶ 34.)  Rafael Natal testified he witnessed Carrasco touching Plaintiff back on many occasions, and that he himself was touched on his back by Carrasci on various occasions.  Id.  Rafael Natal also heard Carrasco make the following sexual comments: "I'm horny," "look at that ass, it's good to eat it," "how are your buttocks?" and "how would you like to be penetrated?"  Id.  In his

Civil No. 14-1464 (GAG)

deposition, Rafael Natal also testified that he witnessed Carrasco showing pornography to other co-workers.  Id.

Paul Natal Pastoriza ("Paul Natal"), testified Carrasco also asked him how he liked to be penetrated, that he showed porn to other co-workers, that he continuously made sexual comments and asked him about his sexual activity with other female workers at the store.  (Docket No. 105-1 at 8-10.)  Paul Natal testified Carrasco at times grabbed his buttocks, grazed his back, and made him feel uncomfortable.  Id.  Paul Natal states that he reported this behavior to Juan Carlos Lopez twice, but was told to "disregard, [to not] think about it."  Id.  Because he found the conduct "intolerable, frustrating and humiliating," he resigned from Selectos.  Id.

Plaintiff provided evidence that Class' internal investigation into Plaintiff's allegations did not include an interview of Miguel, Rafael Natal, or Paul Natal.  (Docket No. 91 ¶ 38.)

## II.    Defendant's Objections to Plaintiff's Evidence

### A.   Character Evidence Objection

Defendant does not deny any of the allegations made by Plaintiff's co-workers, but instead maintains that this evidence from Plaintiff's Exhibits 11, 12, and 13 at Docket No. 91-1, refers to inadmissible evidence in violation of Federal Rule of Evidence 404(b) and should be stricken from the record.[3]  (Docket No. 102 at 6-8.)

FED. R. EVID. 404(b) prohibits "evidence of other crimes, wrongs, or acts [offered] . . . to prove the character of a person in order to show action in conformity therewith."  FED. R. EVID. 404(b).  However, evidence of prior acts shown for other purposes, such as motive, opportunity, preparation, intent, plan, identity, knowledge or absence of mistake is admissible.  Id.  In employment cases, evidence introduced to show motive or intent to fire, hostile work environment,

---

[3] Plaintiff provides these declarations in support of Plaintiff's Submission of Additional Facts at Docket No. 91 ¶¶ 8-11; 34; 43-49.  The certified translations of the challenged exhibits appear at Docket No. 105-1 at 1-3, 5-16.

**Civil No. 14-1464 (GAG)**

or an employer's knowledge of and failure to rectify the harassment is not considered impermissible character evidence because it is not offered to prove that the sexual harassment occurred.  See Cummings v. Stand. Register Co., 265 F.3d 56, 63 (1st Cir. 2001) (citations omitted) ("evidence of a discriminatory 'atmosphere' may sometimes be relevant to showing the corporate state-of-mind at the time of the termination."); Brown v. Trustees of Boston University, 891 F.2d 337 (1st Cir. 1989) (a variety of courts "have held that prior discriminatory conduct is recognized as probative in an employment discrimination case on the issue of motive or intent.").

In this case, the evidence proffered cannot be introduced to show Carrasco's propensity to sexually harass employees at the store.  Plaintiff may, however, present this evidence to show that Defendant knew or should have known that Carrasco was acting in a manner that created a hostile work environment.  The evidence can also be offered as circumstantial evidence of Defendant's motive and intent when it decided to terminate Plaintiff's employment.  Lastly, Plaintiff may introduce this evidence to demonstrate that the environment was hostile.  All these questions are specifically at issue in this case, and are relevant to determining whether Defendant can be held liable as Carrascos' employer.

Defendant also attempts to exclude this evidence under FED. R. EVID. 403, arguing that its probative value is substantially outweighed by the risk of unfair prejudice.  (Docket No. 102 at 8.) For evidence of prior acts to be admissible under the exceptions listed in Rule 404(b): (1) it must be relevant under Rule 401; (2) its probative value must outweigh its prejudicial effect under Rule 403; and (3) the Court, upon request, may instruct the jury to consider the evidence only for the purpose for which it was admitted.  See Huddleston v. United States, 485 U.S. 681, 691-92 (1988); see also U.S. v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008).  The Court is "accorded a wide discretion in determining the admissibility of evidence under the Federal Rules. Assessing the

Civil No. 14-1464 (GAG)

probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403. . . ." Sprint/United Mgt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008) (citations omitted); see also U.S. v. Guzman-Montanez, 756 F.3d 1, 7 (1st Cir. 2014).  The Court notes that other circuits found that the type of evidence at issue here "is highly probative, hence it is unlikely that any putative prejudice therefrom will be unfair or will outweigh its value."  Hurley v. A. City Police Dept., 174 F.3d 95, 110 (3d Cir. 1999).

In this case, the evidence is highly probative of multiple disputed issues.  The information provided shows a connection between the experiences of Plaintiff and other employees who also contend they were harassed by Carrasco.  All three declarations describe the same response from Defendant's decision-makers when confronted with complaints of harassment.  A reasonable jury could find that Defendant knew of the harassing conduct and failed to take appropriate action despite the existence of a sexual-harassment policy.  Across the board, all the sexual harassment allegations describe the same type of mistreatment that Plaintiff now alleges here.  Thus, the Court finds the information is highly relevant for the limited purpose described above.

Any danger of unfair prejudice can be limited with the Court's jury instructions.  In this Court's experience, the jury will be able to consider such information for a limited purpose, without passing judgment on Carrasco's character or propensity to commit sexual harassment.

III.   **Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a).  "An issue

Civil No. 14-1464 (GAG)

is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).   The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case.  Celotex, 477 U.S. at 325.  "The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).  The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."   FED. R. CIV. P. 56(c)(1)(B).  If the Court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment.  See Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences.  Id. at 255.  Moreover, at the summary judgment stage, the Court does not make credibility determinations or weigh the evidence.   Id.   Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation."  Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

Civil No. 14-1464 (GAG)

## IV.  Legal Analysis

Defendant seeks summary judgment of Plaintiff's sexual harassment claim because it is time-barred, or in the alternative, because he has not demonstrated severe and pervasive harassment by Carrasco that can be imputed to Defendant.  (Docket Nos. 81 at 2; 102 at 4.) Defendant also seeks summary judgment on Plaintiff's retaliation claim because he failed to exhaust administrative remedies, and in the alternative, Defendant has established valid non-discriminatory reasons for the adverse employment action.  (Docket No. 81 at 2.)

A.  Statute of Limitations

Defendant argues Plaintiff's sexual harassment claim is time-barred because there was no contact between him and Carrasco for seven months prior to his termination, and most of the alleged sexual acts occurred more than 300 days prior to his filing at the local ADU.  (Docket No. 102 at 4.)  Plaintiff filed a formal charge with the Department of Labor before the ADU on August 21, 2013, alleging that ever since Carrasco became a store manager in 2012, Plaintiff was the victim of continuous sexual harassment.  (Docket No. 85-18.)  Thus, Defendant argues any events that occurred prior to October 25, 2012, the last day of the limitations period, are time-barred.

A plaintiff may incorporate allegations in his complaint that would otherwise be time-barred if they "are part of the same unlawful employment practice and at least one act falls within the filing period."  Nat'l R.R. Passenger Corp. v. Morgan (AMTRAK), 536 U.S. 101, 122 (2002). Under the Continuing Violation Doctrine, a plaintiff must establish a discriminatory "anchoring act" that occurred within the limitations period.  Noviello v. City of Boston, 398 F.3d 76, 86 (1st Cir. 2005).  Thus, if any act that contributes to Plaintiff's hostile environment claim occurs within the limitations period, all other substantially related acts may be considered by the Court. See Crowley v. L.L. Bean, Inc., 303 F.3d 387, 395 (1st Cir. 2002).

Civil No. 14-1464 (GAG)

1    In this case, Plaintiff offered significant evidence that he was subjected to constant and

2 ongoing harassment by Carrasco.  Plaintiff has established multiple discriminatory anchoring acts

3 that occurred after October 25, 2012.   Any of the previous similar conduct by Carrasco is

4 substantially related to these anchoring acts, and may also be considered by the Court.  As such,

5 the Court will consider the entire scope of Plaintiff's hostile work environment claim from 2011

6 until 2014.  This claim is not time-barred.

7    B.   Title VII

8        i.   Sexual Harassment Claim

9    Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against

10 any individual with respect to his compensation, terms, conditions, or privileges of employment,

11 because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-

12 2(a)(1).   Sexual harassment constitutes sex discrimination prohibited by Title VII.  Meritor Sav.

13 Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986); see also Gorski v. N.H. Dep't of Corrections, 290

14 F.3d 466, 472 (1st Cir. 2002).  Plaintiff's claim is based on a hostile work environment theory.  A

15 plaintiff may establish a violation of Title VII by proving that discrimination based on sex has

16 created a hostile or abusive work environment.  See Forrest v. Brinker Intern. Payroll Co., LP, 511

17 F.3d 225, 228 (1st Cir. 2007) (internal citations and quotations omitted); Meritor, 477 U.S. at 66

18 ("Title VII affords employees the right to work in an environment free from discriminatory

19 intimidation, ridicule, and insult.").   In order to state a *prima facie* case of hostile work

20 environment under Title VII a plaintiff must show the following:

21        that [ ] he[ ] is a member of a protected class; (2) that [ ]he was subjected
        to unwelcome sexual harassment; (3) that the harassment was based upon
22      sex; (4) that the harassment was sufficiently severe or pervasive so as to
        alter the conditions of plaintiff's employment and create an abusive work
23      environment; (5) that sexually objectionable conduct was both objectively
        and subjectively offensive, such that a reasonable person would find it

24

12

Civil No. 14-1464 (GAG)

> hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Forrest, 511 F.3d at 228 (quoting Crowley, 303 F.3d at 395).

Defendant contends that Plaintiff failed to establish the third, fourth and sixth elements of the *prima facie* case: that the harassment was based upon sex, that the conduct was sufficiently severe or pervasive, and that Defendant can be held liable as the employer.  (Docket No. 81 at 2.)

### 1.   Harassment based upon sex

The Supreme Court has made clear that same-sex harassment is actionable under Title VII. See Oncale v. Sundowner Offshore Services, 523 U.S. 75 (1998) (holding regardless of the gender of either the victim or the harasser, any sexual discrimination that places the victim in an objectively disadvantageous working condition could constitute discrimination "because of . . . sex.").  "The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."  Oncale, 523 U.S. at 81; see also Rosario v. Dept. of Army, 607 F.3d 241, 249 (1st Cir. 2010).  There is no question that the harassment at issue in this case was based upon sex.  Plaintiff presented substantial evidence that Carrasco made unwelcomed sexual advances, asked questions of a sexual nature, and verbally and physically demonstrated sexual desire to Plaintiff.  Additionally, other male employees came forward with evidence that Carrasco had engaged in similar harassing conduct as to them.  (See Docket No. 91-1 at 64-139, 154-161.)  Thus, a reasonable jury could find that Carrasco exposed Plaintiff to disadvantageous working conditions based upon his sex.

### 2.   Severe or Pervasive

A Title VII hostile work environment claim exists when a "workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Harris v.

13

Civil No. 14-1464 (GAG)

Forklift Sys., 510 U.S. 17, 21 (1993) (quoting Meritor, 477 U.S. at 65).  The First Circuit has explained a hostile work environment "does not depend on any particular kind of conduct" and "that [t]here is no precise formula for establishing sufficiently egregious conditions."  Perez-Cordero v. Wal-Mart Puerto Rico, Inc., 656 F.3d 19, 29 (1st Cir. 2011).  Courts must look at the "totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Valentin-Almeyda, 447 F.3d at 94.

Courts have distinguished between commonplace indignities and actionable harassment in the workplace.  Offhand remarks, simple teasing, tepid jokes, and isolated incidents are at one end of the continuum and are not actionable.  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  This type of behavior, standing alone, usually does not amount to a hostile work environment.  Id.  Severe or pervasive sexual remarks, bothersome attentions, innuendoes, ridicule, and intimidation are at the other end of the continuum and may establish a hostile work environment.  Noviello, 398 F.3d at 92; Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 19 (1st Cir. 2002); see also O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st Cir. 2001) ("the 'accumulated effect' of repeated verbal attacks and physical intimidation in the workplace may reasonably be found to constitute sexual harassment within the meaning of Title VII.").  Determining where on the continuum specific conduct lies is a difficult task typically best left to a jury.  See Marrero, 304 F.3d at 18 (quoting Gorski, 290 F.3d at 474 ("'[s]ubject to some policing at the outer bounds,' it is for the jury to weigh those factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment.")).

14

Civil No. 14-1464 (GAG)

Defendant contends that Carrasco's alleged contact with Plaintiff was not of sexual nature, but rather incidental conduct that resulted from conducting his functions as a supervisor.  (Docket No. 81 at 12.)  Defendant also argues that any sexual remarks were isolated incidents, and not pervasive enough to constitute sexual harassment.  Plaintiff provides the following evidence to support that Carrasco's conduct was sufficiently severe and pervasive as to affect the conditions of his employment: (1) from the beginning of Carrasco's tenure as a manager at the store until Plaintiff's termination in 2014, Plaintiff was continually sexually harassed by Carrasco; (2) when in close quarters at the cash register, Carrasco would walk behind Plaintiff and press his penis against Plaintiff's body; (3) Carrasco snuck behind Plaintiff and put his penis at the height of Plaintiff's face and asked "what do you think of this?"; (4) every time Carrasco greeted Plaintiff he would squeeze Plaintiff's shoulder and rub Plaintiff's hand in a sexual manner; (5) Carrasco continually made sexual jokes and comments of sexual nature; (6) Carrasco asked Plaintiff if he would "dare hit her with this one" – referring to having sex with a female client; (7) when Plaintiff asked Carrasco to unlock a cabinet for him, Carrasco responded "how you like it for me to open you?"  (See Docket No. 91 ¶¶ 27-28, 30-33.)  Plaintiff also provided evidence that because of Carrasco's conduct, he had to receive medical treatment for more than a month before he was able to return to work.  (Docket Nos. 82 ¶ 24; 85-18; 90 ¶ 24.)

Viewing the evidence in the light most favorable to Plaintiff and resolving all factual disputes in his favor, Plaintiff provides evidence of several sexually charged incidents involving Carrasco, including one unwanted sexual physical contact with an intimate body part, multiple sexual comments, and multiple occasions in which Carrasco touched Plaintiff's body in an unwanted manner.  The Court finds this evidence sufficient to support a claim because a

Civil No. 14-1464 (GAG)

reasonable jury could find it severe and pervasive enough, given that Plaintiff provided evidence that Carrasco's conduct effectively altered the conditions of his employment at Selectos.

### 3. Employer Liability

Defendant argues that it is not liable under Title VII because Carrasco is not a "supervisor" within the meaning of Title VII, and in the alternative, Selectos has an effective policy against sexual harassment and was not negligent in handling Plaintiff's complaint. (Docket No. 81 at 17-21.) The sixth element of a hostile work environment claim requires a plaintiff to demonstrate some basis for employer liability. See Crowley, 303 F.3d at 395. Different standards apply depending on whether the harassing employee is a supervisor or a co-worker. Id. at 401.

An employer is vicariously liable when a supervisor creates a hostile work environment that results in a tangible employment action against the employee. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 764 (1998); see also Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 44 (1st Cir. 2003) ("the harassing supervisor must be the one who orders the tangible employment action or, at the very least, must be otherwise substantially responsible for the action."). Employers are also vicariously liable when a supervisor engages in sexually harassing conduct that does not result in an adverse employment action, absent an affirmative defense. Noviello, 398 F.3d at 94 (citing Ellerth, 524 U.S. 742, 765 (1998); Faragher, 524 U.S. at 807-08). In order to invoke this defense, familiarly known as the Ellerth/Faragher defense, employers must show that they were reasonable in correcting the harassment, and that the employee unreasonably failed to avail himself of corrective measures that were available to him. See Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 765; Torres-Negrón v. Merck & Co., 488 F.3d 32, 40 n. 5 (1st Cir. 2007).

The Court must first assess whether Carrasco qualifies as a supervisor for the purpose of holding Selectos vicariously liable. For vicarious liability to operate, Carrasco must have been

Civil No. 14-1464 (GAG)

Plaintiff's supervisor at the time he allegedly harassed Plaintiff.  See Vance v. Ball State U., 133 S. Ct. 2434, 2439 (2013).  "The extent of a worker's authority is determined not by 'nomenclature,' but rather by an examination of 'actual authority.'"  Velazquez-Perez v. Developers Diversified Realty Corp., 753 F.3d 265, 271 (1st Cir. 2014) (citing Noviello, 398 F.3d at 96).  Thus, for purposes of vicarious liability, the supervisor must be empowered "to take tangible employment actions against a victim, i.e., to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Vance, 133 S. Ct. at 2443 (quotations omitted).

In this case, Plaintiff provides evidence that Carrasco signed a disciplinary action as a "supervisor" on January 19, 2012.  (Docket No. 90 ¶ 10.)   Additionally, in response to interrogatories, Selectos labeled Carrasco as a store manager, and identified him as one of seven supervisors at Selectos.  Id. ¶ 8.  These factors indeed suggest that Carrasco was a supervisor. However, Defendant's evidence shows that, except from the authority to sign an admonition, Carrasco did not have actual authority to take tangible adverse employment actions against Plaintiff.  This is further evidenced by the fact that Alvarez, not Carrasco, decided to terminate Plaintiff.  (Docket No. 82-23.)   Additionally, Alvarez testified that Carrasco did not have the power to give employees promotions or alter their schedules.  (Docket No. 82-2.)  Absent actual authority to hire, fire, promote, or effect a re-assignment or significant change in benefits, Carrasco is not considered Plaintiff's supervisor for purposes of Title VII, even if he was labeled a "supervisor" and "store manager" by Selectos.  See Vance, 133 S. Ct. at 2454 (refusing to find co-worker a supervisor within the meaning of Title VII, even though her job description stated she supervised other employees, and she often led and directed other employees.)  Thus, Defendant is

**Civil No. 14-1464 (GAG)**

not vicariously liable, and the Court instead applies the negligence standard in analyzing Defendant's potential liability.

To establish employer liability for the conduct of a co-worker, a plaintiff must demonstrate the employer was negligent; essentially, that the defendant "knew or should have known" of the alleged harassing conduct, and failed to respond with prompt and appropriate action. Crowley, 303 F.3d at 401. Knowledge may be imputed to an employer if information regarding the harassment reaches an individual who is designated to receive such complaints and has the power to remedy the problem, or "who is reasonably believed to have a duty to pass on the information." Id. at 403 (citing Sims v. Health Midwest Physician Servs. Corp., 196 F.3d 915, 920 (8th Cir. 1999)). It is the plaintiff's burden to show the employer's knowledge and the inadequacy of its response. Ortiz v. Hyatt Regency Cerromar Beach Hotel, Inc., 422 F. Supp. 2d 336, 342 (D.P.R. 2006). To be adequate, the employer's response "must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made." Otero Vazquez v. Am. Home Prods. Corp., No. Civ. 01-2126 (RLA), 2005 WL 2001299, at *10 (D.P.R. Aug. 19, 2005). "Determining what constitutes a 'prompt and appropriate' employer response to allegations of sexual harassment often requires the sort of case-specific, fact-intensive analysis best left to a jury." Forrest, 511 F.3d at 232.

In the present case, Plaintiff maintains he complained verbally to Alvarez, in writing to Rosa, in writing on the July 2nd admonishment in objection to the disciplinary action, and ultimately filed a formal complaint with the ADU and the EEOC on August 21, 2013. (Docket No. 91 ¶¶ 4-7.) Plaintiff also provided testimonial evidence of three other employees at Selectos, who also claimed they were victims of sexual harassment by Carrasco, that they notified Selectos management about the sexual harassment, and that Selectos failed to take appropriate remedial

Civil No. 14-1464 (GAG)

1   action.  (Docket No. 91-1 at 52-139, 150-161.)  Defendant denies both that Plaintiff complained

2   verbally to Alvarez, and that any letter was ever received by Rosa.  (Docket No. 104 ¶¶ 4-5.)

3   However, because Defendant concedes that it was made aware of complaints on July 2, 2013, there

4   is no question that Selectos had knowledge of Carrasco's harassing behavior.

5          The Court then must determine whether, after learning of such harassment, Defendant

6   failed to respond with prompt and appropriate remedial action.  Defendant maintains that as soon

7   as it received Plaintiff's complaint it initiated an internal investigation.  Plaintiff counters that the

8   investigation was a delayed response after he had complained previously to no avail.  Plaintiff also

9   provided evidence that neither he nor any of the three other co-workers that complained of

10  Carrasco's harassment were interviewed as part of the investigation.  Defendant counters that

11  Plaintiff was sent a letter to submit a more detailed complaint, but this letter was returned as

12  "unclaimed."  The internal investigation ultimately concluded that no act of sexual harassment had

13  occurred, and Carrasco was not suspended or disciplined.

14         Additionally, Plaintiff's provided testimony from his co-workers in regards to Selectos'

15  failure to act in their respective situations.  Miguel testified that she complained to Alvarez to no

16  avail, and Paul Nadal testified that he reported Carrascos' conduct to Store Manager Juan Carlos

17  Lopez, and was told to ignore it.  Thus, coupled with the fact that these employees also complained

18  to Selectos and nothing was done, the Court agrees that a reasonable jury could find that

19  Defendant's remedial actions were insufficient.

20         The Court finds issues of fact remain as to whether Selectos was negligent in handling

21  sexual harassment complaints by Plaintiff and other co-workers at the store.  A reasonable jury

22  could find Selectos knew or should have known of the harassment, and yet, failed to remedy it

23  adequately.  Because genuine issues of material fact regarding employer liability for severe and

24

Civil No. 14-1464 (GAG)

pervasive sexual behavior remain, summary judgment as to Plaintiff's sexual harassment claim is **DENIED**.

        ii.  Retaliation Claim[4]

        Plaintiff also alleges Defendant retaliated against him by terminating his employment for internally complaining about Carrasco's sexual harassment, and filing a charge with the EEO and the ADU.  (Docket No. 13 at 26-28.)  Defendant counters that a long period of time transpired between Plaintiff's complaint and his ultimate firing, and that in any case, Plaintiff was fired because he received multiple disciplinary actions.  (Docket No. 81 at 16.)

        Title VII makes it unlawful for an employer to retaliate against a person who complains about discriminatory employment practices "or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing'."  Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 60 (2006) (citing 42 U.S.C. § 2000e-3(a)). "The relevant question is whether [the employer] was retaliating against [the plaintiff] for filing a complaint, not whether he was motivated by gender bias at the time."  See DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008).

        To prove a claim of retaliation, a plaintiff must establish that he: (1) engaged in protected conduct under Title VII; (2) suffered a materially adverse employment action that harmed the plaintiff inside or outside the workplace enough to 'dissuade a reasonable worker from making or supporting a charge of discrimination,'; and (3) that the adverse action taken against him was causally connected to his protected activity.  Fantini v. Salem State College, 557 F.3d 22, 32 (1st

_____

[4] Defendant mistakenly argues that Plaintiff did not exhaust administrative remedies as to his Title VII Retaliation claim, (Docket Nos. 81 at 15; 102 at 9), even though Plaintiff has provided ample evidence that he filed a dual filing with the ADU and the EEOC complaining of incidents of both sexual harassment and retaliation, the ADU sent Plaintiff's request for a Right-to-Sue letter with the EEOC, and Plaintiff received a Right-to-Sue letter on April 8, 2014 for EEOC Charge No. 16H-2013-00669.  (Docket Nos. 81-20; 91-1 at 144-149.)  Thus, Plaintiff has clearly exhausted administrative remedies.  See Rodriguez v. Henry Schein, Inc., 813 F. Supp. 2d 257, 262 (D.P.R. 2011) (charges filed with ADU are considered dual-filed with the EEOC and vice versa).

Civil No. 14-1464 (GAG)

Cir. 2009); Bibiloni Del Valle v. Puerto Rico, 661 F. Supp. 2d 155, 168 (D.P.R. 2009) (quoting Mariani-Colon v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 223 (1st Cir. 2007)). The First Circuit has repeatedly acknowledged that the plaintiff's *prima facie* burden is not onerous and is easily satisfied.  See, e.g., Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 26 (1st Cir. 2004); Chungchi Che v. MBTA, 342 F.3d 31, 38 (1st Cir. 2003); Fennell v. First Step Designs, 83 F.3d 526, 536 (1st Cir. 1996).

Once the plaintiff satisfies his *prima facie* burden, the defendant must produce a legitimate, nondiscriminatory reason for the adverse action.  Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003) (citations omitted).  After the defendant satisfies this burden of production, it ultimately falls on the plaintiff to show that the employer's articulated reason was mere pretext to cover up retaliation.  Id. at 478.

1. *Prima Facie* Case

First, there is no question that Plaintiff engaged in protected conduct, not only by filing his formal complaint with the EEOC and the ADU, but in making each of his internal complaints about the alleged sexual assault to management at Selectos.  See Petrarca v. Southern Union Co., No. 04–310S, 2007 WL 547690, at *12 (D.R.I. 2007) (citing 42 U.S.C. § 2000e–3(a)) ("protected conduct under Title VII's anti-retaliation provision is not limited to filing an administrative charge of discrimination. It expressly prohibits retaliation for 'oppos[ing] any practice made an unlawful practice' by Title VII."); see also Perez-Cordero v. Wal-Mart Puerto Rico, Inc., 656 F.3d 19, 31 (1st Cir. 2011) (holding plaintiff's reporting of complaints to his superiors about the harassment to which he was subjected suffices to show his "opposition" to that harassment within the meaning of Title VII).  Thus, Plaintiff's verbal and written complaints to Selectos' management, and his formal complaint to the ADU and the EEOC, all qualify as protected conduct.

Civil No. 14-1464 (GAG)

Second, Plaintiff has provided evidence of multiple adverse employment actions that ultimately culminated in his dismissal. "Examples of adverse employment actions in the retaliation context include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010) (internal quotations omitted). Memorandum of disciplinary admonishments also qualify as adverse employment actions. See Calero-Cerezo, 355 F.3d at 25. "Minor disruptions in the workplace, including 'petty slights, minor annoyances, and simple lack of good manners,' fail to qualify. Id. (quoting Burlington N., 548 U.S. at 68). To defeat summary judgment, Plaintiff must make a colorable showing that the actions taken against him rise to the level of a "materially adverse" action such that it "well might have dissuaded a reasonable [person] from making or supporting a charge of discrimination." Burlington N., 548 U.S. at 57. Here, Plaintiff presented evidence that he was constantly yelled at, treated differently than other employees, stripped of his responsibilities as a stocker and moved to a part time cashier position, his work schedule was reduced from full-time to part-time, he was given unjustified disciplinary admonitions, and was ultimately discharged. All of these are the types of adverse employment actions that would dissuade a reasonable employee from speaking out against sexual harassment.

Lastly, Plaintiff must show that his termination was causally connected to the protected activity. The Supreme Court in University of Tex. Sw. Med. Ctr. v. Nassar, recently re-wrote the standard for causation in retaliation cases, holding that Title VII retaliation claims "must be proved according to traditional principles of but-for causation . . . [which] requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the

Civil No. 14-1464 (GAG)

employer." 133 S.Ct. 2517, 2533 (2013).  Plaintiff must show that but-for his sexual harassment complaints, he would not have been fired.  Id.; see also Zann Kwan v. Andalex Group LLC, 737 F.3d 834 n. 5 (2d Cir. 2013) (but-for causation does not require proof that retaliation was the only cause of the employer's action, only that the adverse action would not have occurred in the absence of the retaliatory motive).

To prove a causal connection, the employee may rely on direct evidence such as "[c]omments which, fairly read, demonstrate that a decision maker made, or intended to make, employment decisions based on forbidden criteria." Febres v. Challenger Caribbean Corp., 214 F.3d 57, 61 (1st Cir. 2000); see also Hicks v. Baines, 593 F.3d 159, 160 (2d Cir. 2010) (showing causal connection by evidence of retaliatory animus directed against the plaintiff by the defendant).  A causal link may be also be inferred when the retaliatory conduct happens soon after the protected activity.  Biblioni del Valle v. Puerto Rico, 661 F. Supp. 2d 155, 170 (D.P.R. 2009).

When an adverse action occurs long after the protected activity, or without direct evidence, and employee may still prevail by presenting enough circumstantial evidence to infer that there is a causal link between the protected activity and the adverse employment action.  See DeCaire, 530 F.3d 1 at 20.  "The determination of whether retaliation was a 'but-for' cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination that there is no genuine dispute as to any material fact."  Zann Kwan, 737 F.3d at 846 n. 5.

Ultimately, Plaintiff can meet his burden to show a causal connection with direct evidence that any time he complained internally or to the ADU, Selectos quickly responded with adverse employment actions that would not have occurred but for Plaintiff's complaints.  To demonstrate but-for causation Plaintiff provided evidence that after he submitted a written letter complaining of

Civil No. 14-1464 (GAG)

the sexual harassment, Rosa changed his attitude towards Plaintiff and yelled at him often.  After he complained, Selectos also decided to reduce Plaintiff's workhours from full-time to part-time. Furthermore, Plaintiff disputes all but one of the disciplinary actions taken after he engaged in protected conduct, claiming that the disciplinary actions were unwarranted and unjustified. Additionally, when Plaintiff objected to the July 2, 2013 admonishment in writing, stating that he was formally complaining of sexual assault at the store, Selectos' owner yelled at him, called him a trickster, and told him to leave the store.  Plaintiff was then immediately suspended from work pending an investigation of the sexual assault.  Plaintiff also provided evidence that he was ultimately discharged six months after he filed the formal complaint with the ADU and EEOC.

Defendants are mistaken to only rely on the six-month period between Plaintiff's ADU complaint and his ultimate firing.  Analyzing the totality of the evidence, the Court finds that these particular facts show a stark contrast in the treatment Plaintiff received in the immediate aftermath of reporting sexual harassment internally and officially to the ADU.  Plaintiff has provided sufficient evidence to support a causal connection between his protected conduct, and each alleged employment action, including his ultimate dismissal.  A reasonable jury could regard the disciplinary actions, repeated admonishments, and ultimate dismissal, following suddenly on the heels of his complaints, as adverse employment actions caused by Plaintiff's sexual harassment complaints.

2.  <u>Legitimate, Non-discriminatory Reasons and Pretext for Retaliation</u>

Because Plaintiff has stated a *prima facie* case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment actions taken against Plaintiff. <u>See</u> <u>Wright</u>, 352 F.3d at 478 (citations omitted).  Then, the burden shifts to Plaintiff to show that Defendant's articulated reason was mere pretext.  <u>Id.</u>  Still, "on summary judgment, the need to

24

**Civil No. 14-1464 (GAG)**

order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a question for a fact-finder as to pretext and discriminatory animus." Fennell, 83 F.3d at 535.

In this case, Plaintiff provided factual evidence from which a reasonable juror could conclude that Defendant's real reason to undertake the alleged adverse employment actions was retaliation.  On one hand, Defendant offered substantial evidence that the reasons for Plaintiff's disciplinary admonishments discharge were not motivated by retaliation, but rather, that he was repeatedly reprimanded due to his pattern of improper and disorderly conduct, sub-par performance, and violations of company rules.  On the other hand, Plaintiff maintains that all but one of these disciplinary actions were given in retaliation for engaging in protected conduct.  He also provided evidence that as soon as he complained in writing after the July 2, 2013 admonishment, he was suspended pending investigation and told to leave the premises. Furthermore, specific to Defendant's ultimate decision to fire Plaintiff due to a $4.94 imbalance, Plaintiff provided evidence that Selectos' regulation does not call for termination for such a violation, and that there is no evidence that any other employee had ever been terminated for this minor offense.

Thus, Plaintiff has pointed the Court to specific facts that support an inference that unlawful retaliation motivated Defendant to take adverse employment actions against Plaintiff. Because genuine issues of fact remain regarding Defendant's reasons for taking adverse employment actions against Plaintiff, and he demonstrated that these actions may have been taken in retaliation for reporting sexual harassment, the Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claim.

Civil No. 14-1464 (GAG)

**V.     Supplemental Claims**

Because Plaintiff's Title VII sexual harassment and retaliation claims survive Defendant's motion for summary judgment, the Court may, in its discretion, exercise supplemental jurisdiction over his remaining state law claims.  See Vera-Lozano v. Int'l Broad., 50 F.3d 67, 70 (1st Cir. 1995) (citations omitted) (holding when a state law claim and a federal claim "derive from a common nucleus of operative fact" and the plaintiff "would ordinarily be expected to try them both in one judicial proceeding," the district court may exercise supplemental jurisdiction over the state law claim.).  The Court addresses each of Plaintiff's state law claims in turn.

A.   Law 80

Law 80 provides a remedy for unjust dismissal. See P.R. LAWS ANN. tit. 29, § 185b.  A dismissal without just cause is "[one] made by mere whim or fancy of the employer or without cause relative to the normal operation of the establishment." P.R. LAWS ANN. tit. 29, § 185b. The statute allows termination for a number of reasons related to the employee's job performance, including an employee's improper and disorderly conduct, negligent attitudes toward her work, and violations of the employer's policies. See id.; Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998). The employer bears the ultimate burden to prove that it had just cause to terminate the employee.  See P.R. LAWS ANN. tit. 29, § 185k; Alvarez-Fonseca, 152 F.3d at 28.

For the aforementioned reasons, the Court has found genuine issues of material fact regarding Defendant's stated reasons for Plaintiff's termination.  Accordingly, the Court **DENIES** Defendant's motion for summary judgment as to Plaintiff's law 80 claim.

Civil No. 14-1464 (GAG)

1    B.  Claims under 69, 17 & 115

2    Law 100 and Law 69 prohibit employment discrimination on account of gender.  "Puerto

3    Rico's Law 100 is a broad antidiscrimination statute analogous to Title VII in many respects."

4    Perez-Cordero, 656 F.3d. at 26 n. 10. Furthermore, "Puerto Rico's Law 17 . . . is to be interpreted

5    *in pari materia* with Law 100 and merely identifies with greater specificity conduct that Law 100

6    already prohibits." Id. (citing Matos Ortiz v. Puerto Rico, 103 F. Supp. 2d, 59, 64-65 (D.P.R.

7    2000)).  See Vargas v. Fuller Brush Co., 336 F. Supp. 2d 134, 142 (D.P.R. 2004) (stating that Law

8    17 and Law 69 represent more specific prohibitions of what is already prohibited by Law 100 and

9    that all three statutes form a single legislative scheme to create a public policy against sex

10    discrimination); Levine-Diaz v. Humana Health Care, 990 F. Supp. 2d 133, 156 (D.P.R. 2014);

11    Gerald, 707 F.3d at 26-27.

12    Likewise, Puerto Rico's Law 115, the local anti-retaliation statute, closely mirrors Title

13    VII's anti-retaliation provision.   Law 115 requires Plaintiff to demonstrate that she: "(1)

14    participated in an activity protected by §§ 194 *et seq.*, and; (2) was subsequently discharged or

15    otherwise discriminated against."  Collazo v. Bristol-Myers Squibb Inc., 617 F.3d 39, 45 (1st Cir.

16    2010) (internal quotations omitted).  Law 17 also protects employees against retaliatory actions

17    taken by an employer due to an employee's participation in the lodging or investigation of a sexual

18    harassment complaint.  See P.R. LAWS ANN. tit. 29, § 155h; Matos Ortiz , 103 F. Supp. 2d at 63

19    (citing Law 17 supports sexual harassment and retaliation claims).

20    Because Plaintiff's Title VII sexual harassment and retaliation claims survive Defendant's

21    motion for summary judgment, so do his claims under Laws 100, 69, 17 & 115. The Court

22    **DENIES** Summary judgment as to these four claims.

23

24

27

Civil No. 14-1464 (GAG)

C. <u>Article 1802 and 1803 of the Puerto Rico Civil Code</u>

Plaintiff also alleges claims under Article 1802 and 1803 of the Constitution of the Commonwealth of Puerto Rico.  (<u>See</u> Docket No. 1.)  The Supreme Court of Puerto Rico has held that "[a]s a general rule, in the face of conduct by an employer that has been typified and penalized by special labor legislation, the employee only has recourse to the relief of said Act, and is barred from seeking additional compensation under Article 1802." <u>Reyes-Ortiz v. McConnell Valdes</u>, 714 F. Supp. 2d 234, 239 (D.P.R. 2010) (quotations omitted).  A plaintiff may only bring an additional Article 1802 claim if it is based on tortious or negligent conduct that is distinct from the conduct covered by the specific labor law.  <u>Id.</u> (citations omitted).  Plaintiff is barred from bringing claims under Article 1802 because the conduct he alleges is based on the same facts that give rise to Plaintiff's causes of action under Puerto Rico's sexual harassment, discrimination, and wrongful dismissal local statutes cited above.   Therefore, Defendant's motion for summary judgment as to Plaintiff's Article 1802 and 1803 claims is **GRANTED**.

**VI.    Conclusion**

For the reasons stated above, Defendant's motion for summary judgment as to Plaintiff's Article 1802 and 1803 claims is **GRANTED**.  Defendant's Motion for Summary Judgment as to Plaintiff's retaliation and sexual harassment claims under Title VII is **DENIED**.

This case is hereby referred to Magistrate Judge Bruce McGiverin for the holding of a pre-trial/settlement conference. The parties shall file a *joint*, proposed pre-trial order on or before April 15, 2016.  The parties shall engage in further, good-faith negotiations prior to the conference, as Judge McGiverin may issue any other settlement directives. The Court hopes that the instant ruling will aid the parties in reaching an acceptable compromise that will end this litigation.

**Civil No. 14-1464 (GAG)**

**SO ORDERED.**

In San Juan, Puerto Rico this 16th day of March, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge